### OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*School and School Committee. Constitutional Law*, Self incrimination, Due process of law, Public employment, Ex post facto law, Bill of attainder. *Public Employment. Teacher.*

A law requiring the discharge of any teacher in any public school in the Commonwealth who should refuse for any reason whatsoever, including a refusal based on the ground of self incrimination, to answer questions pertinent to his past or present membership in the Communist Party at a trial or at a duly constituted hearing or inquiry, would not be unconstitutional as an infringement of his privilege against self incrimination, or as denying him due process of law, or as an ex post facto law, or as a bill of attainder.

On June 24, 1955, the Justices submitted the following answer to a question propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit this answer to a question set forth in an order of the House dated June 2, 1955, and transmitted to us on June 7.

The question relates to a proposed act known as House, No. 2590, as amended, now pending before the General Court, providing in substance that any instructor or teacher in any public school who for any reason whatever refuses at a trial or at a duly constituted hearing or inquiry conducted for the purpose of investigating communism, at which testimony is taken under oath, to answer questions pertinent to his past or present membership in the Communist Party shall forthwith be discharged. The act is to be enforced by the Attorney General "in appropriate proceedings."

The question reads as follows: "Is it constitutionally competent for the General Court to enact a law providing for the discharge of any instructor or teacher at any public school, in the commonwealth who refuses for any reason

whatsoever, intending to include therein refusals based on the grounds of self-incrimination, to answer questions pertinent to his past or present membership in the Communist Party at a trial or at a duly constituted hearing or inquiry conducted for the purpose of investigating communism, at which testimony is taken under oath, substantially as set forth in said House, No. 2590, amended?"

In an opinion of the Justices to the House of Representatives on April 13 of this year, *ante,* 763, the Justices expressed the view for reasons there fully stated that an act similar to the present proposed act but applicable to any professor, instructor or teacher at any college, university, teachers' college or public or private school would be unconstitutional as in derogation of the constitutional right not to incriminate oneself. We did not consider whether the act then proposed would be unconstitutional as denying due process of law or as an ex post facto law or bill of attainder (page 768) and we expressed no opinion as to whether an act limited to public schools as is the present proposal, would be valid. The act now proposed is certainly different in material respects from the former one, and the question would now seem to be whether these differences should lead to a different conclusion, and whether the present proposal is open to objection on grounds which it was not necessary to consider in the former opinion.

In the case of *Faxon* v. *School Committee of Boston,* 331 Mass. 531, this court held that the school committee in the exercise of its general powers could constitutionally dismiss a teacher who had refused on the ground of self incrimination to answer questions as to his connection with the Communist Party. That decision was rested upon the ground that public opinion in relation to communism was such that the school committee could find that a teacher who refused to answer such questions had lost his usefulness, and that to allow him to continue as a teacher would undermine public confidence and react unfavorably upon the school system. We further took the view that, although the petitioner had a constitutional right not to incriminate him-

self, he had no constitutional right to be a public school teacher, and that he could not conduct himself in a manner inconsistent with duty voluntarily assumed when he became a teacher and still insist upon remaining in his teaching position. We do not consider it necessary to repeat here the reasoning fully set forth in that case. We there said at page 537, "In a constitutional sense it seems to us to make no difference whether a teacher is dismissed because of statutory provisions expressly providing for such dismissal or, as in the present case, by an order of a public board acting within its statutory authority." We there cited many cases where public employees had been held to have renounced certain constitutional rights because the exercise of such rights would be inconsistent with the public employment undertaken. Some of those were cases where the inconsistency was established by statutory enactment. We need not repeat those citations here. To them may be added *Norwalk Teachers' Association* v. *Board of Education of Norwalk*, 138 Conn. 269, *Detroit* v. *Division 26 of the Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America*, 332 Mich. 237, *State* v. *Patterson*, 234 Minn. 432, 436, *King* v. *Priest*, 357 Mo. 68, and *State* v. *Strain*, 152 Neb. 763. We adhere to what was decided in the *Faxon* case.

The question now is whether the General Court has power to enact as a rule to be universally observed the substance of the decision which we held in the *Faxon* case was within the power of the school committee. The General Court is the source of the authority of school committees and can limit or extend their powers and lay down rules for the government of the public schools. It has laid down many such rules in great detail in G. L. (Ter. Ed.) c. 71. It is difficult to formulate a reason why the General Court as the legislative branch of the State government charged with the control of public policy may not enact a statute which will have the same effect in all similar cases that the act of the school committee had in the *Faxon* case. If the decision of the school committee did not violate the Consti-

tution it seems to us that such an act of the General Court would not violate the Constitution.

A considerable search has revealed only two cases where statutes closely similar to the act now proposed have been passed upon. One of these, decided by the Court of Appeals of New York in 1954, is reported as *Daniman* v. *Board of Education of New York* in 306 N. Y. 532. The other is *Board of Education of Los Angeles* v. *Eisenberg,* 129 Cal. App. (2d) 868 (1954). In both cases the statute was held to be constitutional. A third case, *Board of Education of Los Angeles* v. *Wilkinson,* 125 Cal. App. (2d) 100 (1954), is very nearly in point and reached the same result. In *United Public Workers of America (C. I. O.)* v. *Mitchell,* 330 U. S. 75, an act of Congress, known as the Hatch act, which in substance forbade Federal employees from taking an active part in elections was held constitutional. The court said at page 103, "When actions of civil servants in the judgment of Congress menace the integrity and the competency of the service, legislation to forestall such danger and adequate to maintain its usefulness is required." In *Garner* v. *Board of Public Works of Los Angeles,* 341 U. S. 716, a charter provision required an oath and affidavit from officers and employees relative to membership in the Communist Party as a condition of continued employment. It was held that discharges for refusal to make the oath and affidavit were lawful. In *In re Anastaplo,* 3 Ill. (2d) 471, it was held that the petitioner could be denied the privilege of practising law because he refused to tell the examining committee whether he was a member of the Communist Party, citing *Faxon* v. *School Committee of Boston.*

In the proposed act the mere refusal to testify is made the ground of discharge. No question of the teacher's knowledge of the aims of the Communist Party is involved. *Galvan* v. *Press,* 347 U. S. 522. *Board of Education of Los Angeles* v. *Eisenberg,* 129 Cal. App. (2d) 868, 874 (1954).

The proposed act for reasons already stated does not deny due process of law and is not an ex post facto law. It is entirely prospective in its operation. It relates only to

refusals to answer after the act takes effect. Neither is it a bill of attainder. There is no legislative conviction or punishment for conduct before the passage of the act. *United States* v. *Lovett*, 328 U. S. 303. *Cummings* v. *Missouri*, 4 Wall. 277. *Ex parte Garland*, 4 Wall. 333.

We need hardly add that this opinion is confined to the precise question submitted relating to refusal by a teacher in a public school to answer questions pertinent to his membership in the Communist Party at a trial or at a duly constituted hearing or inquiry conducted for the purpose of investigating communism; that is to say, to a situation similar to that presented in *Faxon* v. *School Committee of Boston*, 331 Mass. 531, and expressly left open in the opinion of the Justices of April 13, 1955, *ante*, 763. It rests upon the power of the General Court to regulate employment in the public instrumentalities of the Commonwealth as distinguished from the regulation of employment in private enterprises.

It cannot be said that the answer here given is free from doubt. Doubt will continue until the Supreme Court of the United States decides a case more closely in point than any with which we are now familiar. It appears in 348 U. S. 935, that that court has noted probable jurisdiction of an appeal in the case of *Slochower* v. *Board of Higher Education of New York* which appears to have been a companion case to the New York case of *Daniman* v. *Board of Education of New York*, 306 N. Y. 532, the main point in which we are unable to distinguish from the question now presented to us. It is probable therefore that there will soon be an authoritative decision definitely settling the point.

We answer the question, "Yes."

STANLEY E. QUA.
HENRY T. LUMMUS.
JAMES J. RONAN.
RAYMOND S. WILKINS.
JOHN V. SPALDING.
HAROLD P. WILLIAMS.
EDWARD A. COUNIHAN, Jr.